All right, we'll hear our last case of this morning. Wynik versus, and I hope I didn't get the pronunciation wrong on that, versus Temple University. Number 20-2525. Good morning, Your Honors. My name is Danielle Banks, and I'm here with my colleague, Adam Brown, on behalf of appellant Dr. Shivani Dua, who was a defendant below. I'd like to reserve three minutes for rebuttal, if I could. That'll be granted. Thank you. We're here today because Dr. Dua, who was an employee of Temple University Health, complained, issued a written complaint to her employer that a supervisor had touched her inappropriately and had made inappropriate comments to her, sexually harassing comments. She made that complaint. She has to maintain anonymity because in that written complaint, which is attached to Dr. Wynik's amended complaint as an exhibit, she specifically said, I want to be anonymous because I am concerned about retaliation, but I feel I must speak up because I don't want this to happen to anyone else. That's in the record. That complaint then led to a quasi-judicial proceeding, and it led to Dr. Wynik's termination. Dr. Dua, let's get right to it. We know the facts here well. But you argue that, I mean, our procedural stance right now is motion to dismiss, right? Yes. You say that this letter supported an inference that your client intended to initiate a quasi-judicial proceeding, right? But is that really the standard here at the motion to dismiss stage? Are we supposed to adopt that kind of an inference? Actually, that's the nuanced difference there. What we're saying is, in this context, when someone makes a complaint in the way they are supposed to, they made it to the employer. We did exactly what they're told to do, report up. There is no question to be asked about their intent. It is inferred, just as it is in the criminal context. When you make a complaint to your employer, you expect that process will ensue. You expect that they are going to take the next step. That's why you file a complaint, just like in the criminal context. But is that a fair inference at this juncture? We believe it is because, again, here, what would the court ask? What would be the inquiry? What would discovery be? Is a factual inquiry about whether you intended for a quasi-judicial proceeding to ensue? Is that then tested? Who decides that factual inquiry? And we submit to you that the case that was relied upon for the suggestion that you have to look is an opposite. The facts are completely different there. In that case, that's Shane versus Addis, the person who made the statement didn't make it to the proper authorities. She made it six years later during a Thanksgiving break to a friend. She had no expectations of any process ensuing. She had no expectation that that friend was going to go tell anyone. In that context, our Pennsylvania Supreme Court said, well, no, we have to look at the motion to dismiss sage to determine intent because this is a different kind of process that was followed. The process that was followed here is the quintessential what we tell every employee to do, report that you were harassed. And that report is insulated. And then when it comes time to testify about the harassment, you disappear? That seems really odd. I mean, when I report to the police a crime committed against me, I certainly expect to be called as a witness at trial. That's fundamental to due process, right? I can't then disappear and say, well, trust me, I wasn't making it up. Go ahead and prosecute the case. I mean, it seems like something out of the star chamber, doesn't it? I have to disagree. We have not found any case that says that you have to participate in the process thereafter. The standard is that the state. My point is when somebody doesn't assiduously avoid participating in the process, doesn't that shed some light on whether the person was actually intending to invoke quasi-judicial process? No, I don't think so. Because again. Because most people file complaints and then don't participate? Is that your argument? No, my argument, sir, is that here we are talking about sexual harassment. And we're talking about a doctor who said, this is a small universe. This doctor is very well known. And I'm afraid. So we allow for anonymous complaints in the employee context all the time. They are treated as regular complaints, whether a person puts a name to it or not. And there is no requirement. That's because of fear of retribution, right? Yes. But where's Dr. Wynick now? What's his relationship? I'm sorry? What's Dr. Wynick's relationship now with the school? Dr. Wynick has been terminated. So how could he possibly do it in the context of the school? If he has no power, I understand the concept that someone in a position of power in an organization could exact retribution against the downline. But if he's no longer at the institution, what's the risk of employment retribution? At the time when she was asked to testify, he was at the institution. He hadn't been terminated. These were the proceedings that would determine whether he would be terminated. And she wasn't the only complainer. So now she is willing to testify because he's no longer there. No, I'm not saying that she's willing to testify at all. I'm saying that's not. But what confidence do we have that when she made this anonymous complaint, it was intended? I mean, I'm not saying – I don't know whether it was or wasn't. What I'm saying is I don't know, and I don't know how we could know. And if we can't know the answer to that question, isn't that something the trier of fact needs to get to the bottom of? The trial judge needs to get to the bottom of that. No. I, again, say what I'm asking this court for and what I believe the other courts have done. In terms of in a criminal context, when you make a complaint and you're complaining, you do not have to testify for that original statement to be immune, to have immunity attached to it. That's what we're talking about here. The question is, if you make it so that anyone who is seeking to complain about sexual harassment knows that in order to complain, down the road they may face a defamation claim, unless they're willing to stand up and say, one, I'm going to go to court and talk about this. Judge, there's no requirement that you do that. The idea is that we want to know. Again, she wasn't the only complainer here. We want people to come forward. There's a public policy purpose behind this, just as it is in the criminal context, that we want to encourage people to come forward with complaints. She did. That complaint was read into the record at the hearing. There were other witnesses at the hearing. His determination wasn't based solely on what was read from her complaint. It was, and the standard requires that it be material to that proceeding, and it was. That's all that is. It's pertinent and material. That's the standard. It's not that you participate as well. Remind me again. What is it that you're arguing is the inference we should draw regarding your complaint? It is exceedingly difficult for me to hear you. It's not coming through the mic. I'm so sorry. I apologize. What is the inference that you're asking that we draw from the complaint? What is it that we can infer regarding her intent to bring that within? That when someone makes a complaint to the proper authorities, that we infer that they expect that the process to follow is the same process that always follows, that there will be an investigation, that it may well lead to a quasi-judicial proceeding. But couldn't we equally infer that she just wanted something to happen, a demotion, a reprimand, counseling, something, a movement of departments? It seems as though the universe is pretty broad into what we could infer that your client or any reasonable person in that position might have wanted to happen. I think that's the reason the rule goes wrong. What employee is going to know the words quasi-judicial procedure or know that that's what's going to happen next? What you mean when you complain is judge, you want something to happen, and that something may be termination. I agree. And that is certainly what Shane says, that to initiate proceedings or otherwise obtain a remedy. But is that definition, otherwise obtain a remedy, is that really necessary to Shane's holding? And if it isn't, then are we expanding how the privilege would work here to say that, as you say, well, I just want something to occur. I don't care what it is. It doesn't have to be the full process. It just has to be something. And as long as that happens, then I'm within this quasi-judicial immunity. No, what I'm saying is actually that this analysis that the district court employed turns this immunity on its head. There was never – we didn't find a case where the court looked to what was your intent. In fact, the standard is motive doesn't matter in making a statement. Your intent doesn't matter. The only reason intent was engrafted on this was because of the Shane case and the facts of the Shane case. And in the Shane case there, the person who made the statement admitted, I didn't mean for anything to happen. I didn't tell the authorities. I told my friend. But then she tried to avail herself of the immunity. And the courts – whoa. And the question that they certified was – Wasn't the friend involved in administration? At the school, right? The friend was a teacher at the school. And it was six years after this person had graduated from high school. But the bottom line is Shane says intent matters. No, no, no. In that context. And that's the question that was certified. In the context, when you have someone who admits – What was the certified question? It was – I don't recall the question. One moment. Okay. The question was, does the absolute judicial privilege apply to an allegation of sexual misconduct against a teacher by a former student, which allegation was made prior to the commencement of any quasi-judicial proceeding, and without an intent that the allegation lead to a quasi-judicial proceeding? All right. So baked into that was no intent. Absolutely. Okay. But only because she said I didn't have it. And here, if we knew there was no intent, you have a slam dunk, right? But what we're wrestling with, I think, is we don't know whether she had intent or not. And I guess what I'm wrestling with, Your Honor, is that there was and is no case that asked that question before Shane. This privilege has been applied. And no one asked. In fact, again, the standard was you could be lying about what you said. The motive in making the statement was irrelevant. The question was the context in which you made it. That is the question. And the context in which she made it was, again, reporting it to the proper authorities with, again, that specifically said, I don't say to the extent you wanted to ask about intent, and I don't think you should, and I don't think there's any case that my opponent can point to that says so. What's your best case to tell us that intent doesn't matter? I mean, literally, I – where's the – wait, give me one. I want the Pawlowski site. Or if you have a couple of cases that tell us intent doesn't matter. Literally, there's a string site because, again, this was applied and no one, no court, there's no case that my opponent has put in front of you where the court said, what was your intent in making the statement? The question was, is the statement – No, but we have to take cognizance of Shane. It's the latest in – it's the latest guidance on that. And the certified question specifically referenced without intent. And I think the rational inference for a judge to draw from that is that without intent has some significance. And if without intent has some significance to the court's answer to the question, then it stands to reason that with intent would have some salience as well. And I would submit to you that the case simply is not analogous to this case. And normally when we're looking to whether or not we have to apply the case, whether it's guidance, is it actual guidance in this case? Or is it guidance in cases like the ones that have facts like that case? We don't have those facts. We have facts like the traditional facts. And that is that the question that is under Pennsylvania law, the standard is not what is your intent. It is – and the law – and none of these cases have been abrogated post-Shane. There's none that you will look up that says, oh, no, the standard is wrong. The standard is whether it is pertinent and material to the quasi-judicial proceeding. And it absolutely here unequivocally was. And that's the standard for whether or not the immunity attaches. Counsel, we focused on the substance of the district court's ruling. Can you just briefly touch upon our jurisdiction to hear this? Yes. Thank you. In terms of jurisdiction, I think it's fairly clear in this court, and I'll say to the Youngblood v. DeWeese case, that when we are talking about an absolute immunity and the denial of that immunity, I concede that if there's a factual question, that if there is indeed a bona fide factual question, then there would be a jurisdictional issue. Here, with absolute immunity, if it is clear that you are entitled to it, and I believe it is here based on the standard in Pennsylvania of materiality and pertinence, then the immunity attaches and the denial of it entitles you to an immediate appeal under Cohen. It meets all three of the requirements of Cohen. And absolute immunity has been deemed by this court to be too important to leave. Well, now, did the Will Supreme Court decision change the playing field a little bit with respect to application of Cohen in these circumstances? I mean, there has to be a substantial public interest then. And I think here, and I would say there is a substantial public interest here. And one of the things we wrote about in our brief is that if this rule stands, as Judge Goldberg interpreted it, and we believe misinterpreted it, you will quell speech from folks who are legitimately want to complain about their conditions at work, sexual harassment, but if they're afraid to do so, they want to do so anonymously. If they're afraid to testify, they won't come forward. We know that those cases are already underreported. There is a tremendous public policy behind encouraging folks to come forward, to report these things, and to report them in the way that we ask them to, to report up to your employer. That's exactly what Dr. Dua did here. That's a very, very important public policy, but there's also an important public policy of making sure the complaints aren't fanciful, right? We want every complaint that's valid to be aired. We don't want any of them to be hidden or undisclosed, but we also don't want people to have the power to defame others and then hide behind the privilege. You would agree that, too, is an important public policy, is it not? I can't disagree with what is a truism. I would say to the court again that here, there was an investigation. There's ample opportunity for this to be looked into, and that's why I think the court simply has asked in the past, is the statement material and pertinent? And then an investigation ensues, as did here, testimony occurred. There were— But should the investigation have to be judicial or quasi-judicial? When we say judicial, I mean, that comes with it a bucket of due process rights, including the ability to confront witnesses against you and a neutral and impartial arbiter and perhaps some degree of ability to look at documents or evidence, right? I mean, you're absolutely right, but this is only a rule in the context of a quasi-judicial or judicial proceeding. So you will always have those safeguards. This is not a rule that applies—this is literally— And in this case, there's no doubt that what Dr. Wynick received was a quasi-judicial proceeding? I'm sorry? There's no doubt in this case that what Dr. Wynick received, the process he received was something akin to a judicial proceeding? He has a lawsuit pending against Temple University, and that question will be determined. That's separate and apart from whether Dr. Dua's statement is entitled to absolute immunity. But what if—so your argument is even if it's later determined that he didn't get anything remotely like a judicial proceeding that was something more akin to a kangaroo court, your argument is that Dr. Dua still is entitled to absolute judicial immunity? I'm sorry, I should have been more clear. Judge Goldberg has already ruled that this was a quasi-judicial proceeding. Okay. So I didn't mean that. He may have a due process question and say, gee, I don't think you met the due process standards. But Judge Goldberg has already ruled that this was a quasi-judicial proceeding. Thank you, counsel. Thank you, Your Honor. We'll hear from your adversary. Good morning, Your Honors. My name is Joe Heffern. I'm here with my colleague Lance Rogers and Dr. Michael Wynick. He is the appellee and the plaintiff in this matter. I wanted to address a couple points that my colleague over here brought up that I don't think are accurate. This case is a lot more like Shane than she admits. Dr. Dua is not an employee of Temple. She sent this anonymous e-mail four years after leaving the residency program, during which she had been a resident with Dr. Wynick. So that's a point there. This wasn't some established process. This was a one-off e-mail that was to be anonymous. So with that, I wanted to just point to there's two issues, as the Court acknowledged. The first is, do we have appellate jurisdiction here? And we respectfully answer no, because it does not meet the three prongs of the Cohen test. And I will say that the first one, and we've addressed it a little bit, kind of encompasses the second question, which is the substantive question, whether intent is required and whether the Court erred here. And I will say that I think that my colleague over here for Dr. Dua, she admits that if there is a bona fide factual question, there is no jurisdiction. In this instance, because this case, like Shane, is an outlier case, the Court had to look at the factual circumstances. If I file a complaint in federal court, there's no question that that is a complaint and that is immune. In this instance, we have an anonymous e-mail that has been sent to a residency program someone left four years previously. So that is a critical element here that the judge, Judge Goldberg, had to decide, or at least look to see if there's a factual question. So the first prong of the Cohen test says, did the Court conclusively decide a legal question? And the Court said here, no, we don't have enough evidence. We have a factual question here. And to Judge Hardiman's point, I actually think this would become a jury question because a lot of this is going to be based on credibility about when Dr. Dua testifies as to what her intent was when she sent this anonymous e-mail. Was Amber Zukowski the right person to initiate a quasi-judicial proceeding? I would say no, Your Honor. Why not? Because she was a scheduling, my understanding of her role at Temple was she was a scheduling person who kind of made up the rotations for the residents at Temple. Temple, like most universities, have a Title IX person who accepts complaints. Wasn't she the program administrator? She was a program administrator. It sounds like the person you'd go to if you had a sexual harassment complaint. You'd go to your program administrator, wouldn't you? I honestly cannot say that that is necessarily the case, Your Honor, from a factual standpoint. But this emphasizes my point, Your Honor. There are a lot of factual questions here that need to be addressed. But does it matter? I mean, she's an administrator. You say low level or whatever. Sure. I mean, if we start to erect hurdles like this, it's going to be impossible to make a sexual harassment complaint. No, Your Honor. And the reason I respectfully disagree with you is if you look at Shane itself, and as Judge Hardiman brought up, the confidant in that instance was a teacher at the school and was under an obligation to report this. So it doesn't, it's not a situation, whether she was the designated person, the important thing is did Dr. Dua have the intent? And what the district court said. No, no, no. But you complained that she's a low level administrator and it went to the wrong place, and that's a basis to affirm. But is that really a relevant argument? Well, I wouldn't say that that is the sole basis to affirm, Your Honor. That's just one element to this. The real element here is. If it's intent, it doesn't matter to whom the complaint is made, right? If I intend that my complaint go to an adjudicatory body of some kind, it doesn't matter whether I tell my mother, my friend, my program administrator, the principal of the school, right? If it's all about intent. Well, it's intent to create a quasi-judicial process, Your Honor. And here, the intent, you know, our argument is the intent was to defame Dr. Wynick, not to initiate a quasi-judicial process. It just seems like if we accept your argument, there will never be interlocutory jurisdiction over these types of cases. Is that right? Your Honor, there's always the possibility that someone could ask for discretionary interlocutory jurisdiction. But I would say, Your Honor, you know, this kind of moves on to the third point under the Cohen test. This case doesn't merit an interlocutory appeal. There are consequences and costs for having an interlocutory appeal. One very, very specific example, the co-defendant in this case has passed away. He's not going to be at trial now. Because this appeal was filed over a year ago. And at this point, we probably would have been through discovery in the district court and had his testimony and... Would you at least concede that if Dr. Dua had submitted in an email or filled out a form that said something like, I had experiences with Dr. Weineck where he sexually harassed me and I ask that a formal investigation be conducted by the university and that he be held accountable for his behavior. Would you concede that that would satisfy Shan? I would, Your Honor. So if there's a form, a complaint form that she filled out and she's willing to stand behind that, sign her name to it, and like you said, Your Honor, in this instance, the district court could read a lot here because essentially Dr. Dua took a hand grenade, threw it into Dr. Weineck's life, and then washed her hands and walked away. She wanted nothing to do with the quasi-judicial process. And I think that speaks volumes about whether she actually intended to have this case tried or... Yes. Well, she's anonymous and when her... So the facts are a little unclear here, Your Honor, but it appears that either someone at Temple ultimately knew who she was. They tried to contact her multiple times to have her testify. She refused. When Temple finally revealed her identity to Dr. Weineck, we contacted Dr. Dua and asked her to appear at the hearing, to provide testimony, to allow for cross-examination. She refused. She wouldn't even adopt the email or say it was hers. So that's part of the problem here. We have this due process issue where Dr. Weineck has been adjudicated for basically an anonymous email that doesn't specifically request a particular type of remedy even. It just says, I have some concerns... They must have had some other evidence, right? What was their other evidence if they took him off? So there was another witness, Dr. Acevedo, with my understanding it's a different situation. Dr. Acevedo is a male physician and the allegation, the complaint, which should be taken as true at this point, is that there was an underlying movement by this Dr. Maitin to remove... That Maitin weaponized the complaint. Exactly. And so you have these two residents, Acevedo and Dua, who file complaints, send emails, or do something within a day or two of each other. Are you arguing that the hearing was a farce then? That if it were anything remotely like due process, he would have been exonerated? Because, I mean, if your theory of the case is true and that this was a professional jealousy or contest between Maitin and Weineck, then presumably the evidence would have fallen on deaf ears at the hearing, right? Right. And it's interesting because the hearing body actually voted not to terminate Dr. Maitin. That's right. And then they countermanded that. Correct. So there are power... We haven't had the opportunity to depose Temple and all the administrators there, but the idea here is that there was this kind of power zippy at the top that were trying to undermine Dr. Weineck. Take your time. Thank you. So at the end of the day, to appreciate your argument, your argument is that it all comes down to intent. And at this point, you have to allow for the possibility, would you not, that Dr. DeWitt did, in fact, intend that this to go to quasi-judicial proceedings? Absolutely. You're right. Just like Judge Goldberg said. And, you know, one thing that opposing counsel mentioned was, you know, we haven't found a case, we haven't found a case. Shane is that case. That case is incredibly dense. And I would encourage your honors, if you take nothing else out of my argument, please reread footnote number five and the surrounding text. That explains the concept of why intent is important here. It's because this case is on the periphery. And this isn't an instance where, like you suggested, Judge Hardiman, I file a complaint, a form complaint that is clearly, it's intuitive, that it would qualify as an intent to move forward with a quasi-judicial process. Counsel, we don't have any other questions. You have four minutes, but we're happy to take it back. But thank you. Yeah. Well, thank you very much, Your Honor. The only other case I would direct your honors to is McNair. That is a case that I think is basically directly on point, except it's with the D.C. Court of Appeals. And it's a slightly different issue, but it's the same general type of issue, judicial process privilege, which is an affirmative defense. Thank you, Counsel. Thank you very much. Very briefly, I would like to, with regard to intent, the court asked me about citations on that. Even the Shane case said, quote, the privilege is absolute, meaning that where it attaches the declarant's intent is immaterial, even if the statement is false and made with malice. But Shadow B. Gibson, a person who is entitled to absolute immunity, cannot be liable for his communications regardless of his intent. Polaski, importantly, the existence of the privilege does not depend upon the motive of the defendant in making an allegedly defamatory statement. What was the page from Shan that you were quoting? Shan is 121A3rd at 947. And I think this court asked a question of my opponent that is critical. To apply Shane in the way that it was applied here would virtually eliminate any interlocutory appeal on this absolute immunity. It would devolve into a factual question that my opponent said might be resolved by a jury. That's not immunity from suit. That is suit. Except, what about my hypothetical? I mean, counsel conceded that if there were some basic form that a complainant could fill out to trigger the university's quasi-judicial proceeding, counsel conceded that we would have jurisdiction over that, and that would unavoidably indicate an intent on the part of the complainant to invoke quasi-judicial proceedings. Is it that hard? Is it that hard for Temple or any other university to have a basic complaint form? You know, if you have been mistreated, fill out this form and give it to the appropriate program administrator. Frankly, the law that has developed, and this court has been part of developing that law, simply doesn't require a form of that nature. It doesn't require that you sign a complaint. It doesn't require that you even put your name to a complaint. I understand that, but if you don't do it with that level of formality, then you might not have advantage of this very powerful privilege. So then what does that mean for the everyday person working that simply won't have any of this knowledge? That you better not complain about somebody touching you inappropriately, or you're going to be hailed into court over defamation, and if you didn't say the right things there, which you wouldn't even have known about, you are out of luck. You don't get the immunity. I believe that's why the cases are styled as they were. They didn't ask you about what the intent was. They asked whether the statement was material or pertinent, and the question only arose, and as you said, the question intent was baked in to the question that was certified, because the person attempting to avail herself of the immunity had admitted that she never intended for any process to ensue. Here, even if arguendo, Dr. Dewitt was not currently employed at Temple, I thought that she was, but even if she wasn't, it is irrelevant. She made the complaint in the way that she was supposed to. She told the administrator, who then elevated it as required under Temple's policies, and Temple's policies specifically provide that an anonymous complaint is treated exactly like a complaint that comes with a name, and then you have an investigation. You have the quasi-judicial proceeding, and if there was a flaw in that proceeding, that's not Dr. Dewitt. That doesn't affect the immunity. That affects his claim against Temple, which is standing, which remains. It's a quasi-judicial proceeding, but he still has the right to go to court, he's in court, and say he doesn't think the proceeding afforded him due process. He has the chance to prove that. That's separate and apart from whether this person who complained about an inappropriate touching is immune from that complaint that was made to the proper authorities. Thank you. Do we have any more? Okay. Thank you, counsel. Thank you so much. We'll take this case under advisement, and we thank counsel for their excellent briefing here.